UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LOU A. GRIFFIN,<br><br>    Plaintiff,<br><br>v.<br><br>DIANE JENSEN, OFFICER MARTINEZ, OFFICER WARDOO, OFFICER MYERS, OFFICER CHRISTENSEN, LEYENDECKER, LONGSINE, PEARSON, S. FUMELLE, S. JOHNSON, OFFICER WERTEL, C. XIONG, DUSTIN R. DIMMER, and JOHN DOES,<br><br>    Defendants. | Case No. 24-CV-53-JPS<br><br>**ORDER** |

  On January 16, 2024, Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging that various individuals violated his constitutional rights. ECF No. 1. On May 10, 2024, the Court screened Plaintiff's amended complaint and allowed him to proceed on a Fourteenth Amendment medical claim against Doe Defendants. ECF No. 15. Plaintiff later identified the various Doe defendants, ECF No. 25, and Defendant Diane Jensen ("Jensen") appeared on January 28, 2025, ECF No. 46. On January 30, 2025, Jensen filed a suggestion of bankruptcy and notice of automatic interim stay. ECF No. 48. Defendant explained that Wellpath, LLC, her employer at the relevant time, had filed for bankruptcy, so Plaintiff's claim against her should be stayed. *Id.* Defendant further explained that a bankruptcy court's order imposed an automatic stay of this action until February 18, 2025. *Id.* Following a request from the Court, Defendant Jensen filed a status update

on February 28, 2025, indicating the automatic stay was extended. ECF No. 54. On March 4, 2025, the Court administratively closed the case subject to the automatic stay and bankruptcy court's orders. ECF No. 55. Now pending before the Court are Plaintiff's motion to reopen the case, Plaintiff's motion to appoint counsel, and Defendant Jensen's motion for judgment on the pleadings. ECF Nos. 56, 60, 61.

1. **MOTION TO REOPEN**

On May 22, 2025, Defendant Jensen provided a status update about the bankruptcy proceedings. ECF No. 57. Jenson provided that on May 1, 2025, the bankruptcy court had entered an order confirming Wellpath's First Amended Joint Chapter 11 Plan of Reorganization (the "Plan"). *Id.* at 1. On May 9, 2025, the bankruptcy court had lifted the automatic stay, and Wellpath was "discharged from liability for all claims ... involving incidents that happened before the bankruptcy (i.e., before November 11, 2024)." *Id.* at 2. The plan provides that claimants still awaiting judgment on claims against Wellpath may participate in alternative dispute resolution or litigate against the liquidating trust as a nominal defendant. *Id.* Jensen also explained that incarcerated individuals who had personal injury claims pending against non-debtor defendants (Wellpath's directors, officers and other employees) had until July 30, 2025 "to opt out of the third-party releases of claims against non-debtor defendants under the Plan." *Id.* at 3; *see also* ECF No. No. 57-1 at 52, ¶43 (bankruptcy court order of May 1, 2025).

Jensen explained that because the events in the instant case allegedly occurred before November 11, 2024, Plaintiff's claims against Jensen would be discharged unless Plaintiff elected to opt-out of the third-party releases. ECF No. 57 at 3. Plaintiff filed a response to the status report indicating that he did not want to dismiss Defendant Jensen and that he wanted the case

to proceed to mediation. ECF No. 58. In light of the bankruptcy court proceedings, there is no longer a need to stay the case. The Court will therefore lift the stay and reopen the case. The Court now turns to Jensen's motion for judgment on the pleadings.

## 2. MOTION FOR JUDGMENT ON THE PLEADINGS

The Court will grant Jensen's motion for judgment on the pleadings. After the pleadings are closed, but early enough not to delay trial, a defendant may move for judgment on the pleadings if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). In reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6), we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

To survive a motion for judgment on the pleadings, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Claims that have been discharged in bankruptcy can be dismissed for failure to state a claim. *See, e.g., Abercrombie v. Jack Cooper Transp. Co., Inc.*, No. 1:19-cv-503, 2020 WL 3841270, at *1 (N.D. Ind. July 8, 2020) ("Clearly, Plaintiff's claims were discharged in the bankruptcy, as further explained below, such that he fails to state a claim upon which any relief may be granted.").

Here, Jensen seeks judgment on the pleading to dismiss all claims against her with prejudice based on the third-party release contained in the plan of reorganization confirmed by the United States Bankruptcy Court for the Southern District of Texas in *In re Wellpath Holdings, Inc.*, Case 24-90533. ECF No. 61 at 1. Jensen argues that the claims against her have also been released in the bankruptcy proceedings because she is a current/former employee of Wellpath and Plaintiff did not opt out of the third-party release prior to the July 30, 2025 deadline. *Id.* at 5–6. Plaintiff objects to the dismissal of the claims against Jensen and argues that he was not able to understand the legal issues. ECF No. 64. In her reply, Jensen points out that "Plaintiff had the opportunity to challenge the third-party release—and his ability to comprehend the release in Wellpath's bankruptcy proceedings—and did not do so." ECF No. 65.

The Seventh Circuit has stated that "the legal effect of bankruptcy judges' orders does not depend on proof that claimants *understand* the meaning and significance of the documents they receive. It is enough that the documents be received." *Thomas v. Corizon Health, Inc.*, No. 25-1275, 2025 WL 2171021, at *1 (7th Cir. July 31, 2025) (emphasis in original). Nothing in the record indicates that Plaintiff opted out of the third-party release. Plaintiff was made aware of the opt out option during the course of this case. *See* ECF No. 54, 57. Plaintiff's lack of understanding of the third-party release therefore does not negate the bankruptcy court's proceedings. Because the record from the bankruptcy court confirms that claims against Wellpath and its employees (such as Jensen) that occurred before the bankruptcy petition have been discharged, the Court finds that Jensen's motion for judgment on the pleadings must be granted. *See, e.g., Abercrombie.*, 2020 WL 3841270, at *1. The Court will therefore grant the

motion for judgement on the pleadings and will dismiss Jensen from this case with prejudice.

3.  **MOTION TO APPOINT COUNSEL**

The Court will deny Plaintiff's third motion to appoint counsel without prejudice. ECF No. 60. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel

and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than half sought habeas corpus relief, while the remainder were § 1983 actions

---

[1]Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of § 1983 lawsuits has skyrocketed. About 499 § 1983 actions were filed in 2022, and another 571 in 2023—each significantly more than the entirety of the District's civil prisoner filings from years earlier. In 2024, § 1983 actions numbered 582. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff indicates that he contacted attorneys to take his case. ECF Nos. 50, 60. However, Plaintiff contacted only two attorneys, one located in Florida who did not handle his types of claim. ECF No. 50-1 at 15-16. Based on this, the Court finds that Plaintiff did not make a good-faith effort to obtain counsel. Plaintiff has therefore failed to satisfy the first *Pruitt* factor and his motion will be denied without prejudice. Plaintiff may renew his request later, if needed, and cure the deficiencies identified in this Order.

4. **CONCLUSION**

The Court will lift the stay, reopen this case, and grant Jensen's motion for judgment on the pleadings. Plaintiff's motion to appoint counsel will be denied without prejudice. Plaintiff's claims against the remaining defendants will proceed, and the Court will issue a scheduling order in due course.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to reopen the case, ECF No. 56, be and the same is hereby **GRANTED**; the Clerk of Court is **DIRECTED** to **REOPEN** this case;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 60, be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Defendant Diane Jensen's motion for judgment on the pleadings, ECF No. 61, be and the same is hereby **GRATNED**; and

**IT IS FURTHER ORDERED** that Defendant Diane Jensen be and the same is hereby **DISMISSED with prejudice** from this action.

Dated at Milwaukee, Wisconsin, this 31st day of December, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge