# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LOU A. GRIFFIN,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER MARTINEZ, OFFICER WARDOO, OFFICER MYERS, OFFICER CHRISTENSEN, LEYENDECKER, LONGSINE, PEARSON, S. FUMELLE, S. JOHNSON, OFFICER WERTEL, C. XIONG, and DUSTIN R. DIMMER,<br><br>Defendants. | Case No. 24-CV-53-JPS<br><br>**ORDER** |

Plaintiff, Lou A. Griffen, a prisoner currently incarcerated at Racine Correctional Institution, brings this action under 42 U.S.C. § 1983 pro se. ECF No. 1. On May 10, 2024, the Court screened Plaintiff's amended complaint and allowed him to proceed on a Fourteenth Amendment medical claim against Doe Defendants. ECF No. 15. Plaintiff later identified the various Doe defendants as Officer Jensen ("Jenson"), Officer Martinez ("Martinez"), Officer Wardoo ("Wardoo"), Officer Myers ("Myers"), Officer Christensen ("Christensen"), Officer S. Martinez ("S. Martinez"), Leyendecker, Longsine, Pearson, S. Fumelle ("Fumelle"), S. Johnson ("Johnson"), Officer Wertel ("Wertel"), C. Xiong ("Xiong"), Dustin Dimmer ("Dimmer"), and RN T. Schuster ("Schuster"). ECF No. 25. On January 27, 2025, the Court instructed the Clerk of Court to replace Defendants S. Martinez and Schuster with Doe defendants based on the inability to locate these defendants. ECF No. 45. Plaintiff was given the opportunity to locate these defendants through further discovery. *Id.* The case was previously stayed and administratively closed due to bankruptcy court proceedings. ECF No. 55. The Case was later reopened

and proceeded after the dismissal of Defendant Diane Jensen. ECF No. 66. On November 2, 2026, the Court dismissed the Doe defendants without prejudice for Plaintiff's failure to comply with a Court order. ECF No. 102.

Now pending before the Court are Defendants' motion for summary judgment based on the failure to exhaust administrative remedies, ECF No. 79, and Defendants' motion for summary judgment on the merits, ECF No. 92. The motions are now fully briefed and ready for disposition. ECF Nos. 80, 85, 89, 93, 97, 98, 100, 101. Since both motions seek dismissal in full, the Court finds in prudent to address the case on the merits because any dismissal for the failure to exhaust would be a dismissal without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (finding all exhaustion dismissals should be without prejudice). As described below, the Court will grant Defendants' motion for summary judgment on the merits and this case will accordingly be dismissed with prejudice. The Court will accordingly deny the motion for summary judgement based on the failure to exhaust administrative remedies as moot.

**1. LEGAL STANDARD – SUMMARY JUDGMENT**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

## 2. FACTUAL BACKGROUND

In compliance with the Court's scheduling order, the parties submitted a stipulated set of joint facts. ECF No. 94. As such, the Court takes the following facts from the parties' statement of facts except for minor changes. The Court takes any facts in the light most favorable to Plaintiff as the non-moving party.

On October 28, 2020, Plaintiff was booked into the Brown County Jail (the "Jail"). Plaintiff was being held as a pretrial detainee. During booking,
an observation report was completed for Plaintiff. Plaintiff answered questions about his various existing medical ailments, allergies, and current prescriptions for medication. Plaintiff never mentioned any potential issues with his brain or any past issues with his brain during the intake interview. The Brown County Jail provides its inmates with healthcare via a third-party healthcare provider. At the beginning of 2023, Brown County Jail began using VitalCore as its third- party medical provider. VitalCore utilized its own employees and was responsible for providing all of the healthcare for the inmates at the Brown County Jail. Thus, the employees of VitalCore staffed the Jail's Health Services Unit ("HSU").

Plaintiff was originally assigned to the main housing unit in cell 104 but was moved multiple times during his time in the Jail. Plaintiff was in the general population block known as "ALPHA" in cell 107. Plaintiff's assigned housing officer was N. Garza (not a named defendant). The only named defendant responsible for the ALPHA block of cells when Plaintiff was noted to be having health issues was Martinez. No other named defendants were responsible for the ALPHA block of cells.

While Plaintiff was housed in the Jail, he filed multiple complaints about various issues he had with life in the jail using the Jail grievance process. None of Plaintiff's complaints involved any medical issues with his brain or how jail staff members handled any of his medical issues. On March 7, 2023, a correctional officer noticed Plaintiff acting "off." Officer A. Rupnow (not a named defendant) noted that "Griffin was not himself.

He had difficulty getting his uniform on and was leaning against his cell door. He appeared unsteady and looked like he needed medical assistance." Officer Rupnow also noted that Plaintiff "called the nurse and she came down to Alpha and took [Plaintiff's] blood pressure. She also brought him his medication, which he didn't take at morning medication pass. He took the medication for her." Correctional officers at the Jail were not advised by the medical staff from HSU that there was any need for them to take further action for Plaintiff. Correctional officers did not observe any unusual behavior from Plaintiff on March 8 or March 9, 2023, and were not notified by the nurse or other medical staff to take any special precautions with Plaintiff.

On March 10, 2023, Martinez noted that Plaintiff was exhibiting worrisome behavior including only wearing "1 white t-shirt . . . no underwear and his uniform below his knees." Martinez instructed Plaintiff to return to his cell and dress appropriately, but Martinez noted that Plaintiff "was slow to do so and seemed confused as to why [Martinez] was sending him back to his cell." Plaintiff was issued his medications, and afterwards Martinez noticed that Plaintiff still did not have his uniform on properly. When Martinez asked Plaintiff to snap his buttons together, Plaintiff "attempted to but appeared to struggle with the task." Id. Noticing that something was wrong with Plaintiff, Martinez had Plaintiff sit near the officer station and notified the Health Services Unit of the situation. At approximately 8:17 a.m., HSU sent a medical provider, Kortney Oviedo, to check on Plaintiff and Leyendecker also came to check on Plaintiff. After Oviedo checked on Plaintiff in the medical room "Dr. Karanam called and he instructed [HSU Oviedo] to have [Plaintiff] sent out by squad to Aurora Medical Center."

At approximately 9:10 a.m., Plaintiff was transported to the Aurora BayCare Medical Center in Green Bay, Wisconsin where he underwent testing. It was determined that Plaintiff was suffering from a brain abscess. Doctors immediately sent Plaintiff to surgery, and his abscess was removed without any complications. Plaintiff was then

returned to the Jail on March 14, 2023. After his return, Plaintiff was kept under medical observation until he was transferred to Dodge Correctional Institution.

During Plaintiff's post-surgery time at the Jail, he was assessed twice by the Jail's mental health workers. On March 16, 2023, Plaintiff's assessment showed that he "denied any current concerns or distress. [He] relayed mentally he feels well. [He] was oriented." The assessment also showed that Plaintiff acknowledged that he would reach out to correctional officers if there were any concerns. Plaintiff never reached out to any correctional officers with any concerns. On March 27, 2023, a second assessment was conducted on Plaintiff. This time the medical provider noted "No safety concerns or overt distress noted." The assessment also noted that Plaintiff was in good spirits and future oriented. On April 5, 2023, Plaintiff was transferred to Dodge Correctional Institution. Prior to his transfer, Plaintiff never made a complaint about how the jail handled his health issue. Plaintiff never complained to any correctional officers about symptoms or issues he was having relating to his brain abscess. While Plaintiff did complain to the VitalCore employees about headaches prior to his visit to the hospital, those issues were not shared with the correctional officers.

## 3. ANALYSIS

Defendants brought a motion for summary judgment seeking dismissal of the Fourteenth Amendment claim against all defendants. ECF No. 93. Based on the Court's review of the parties' submissions, and for the reasons explained below, the Court will grant Defendants' motion for summary judgment and will dismiss this case with prejudice.

A § 1983 claim that a state pretrial detainee has received inadequate medical care is predicated on the rights secured by the Fourteenth Amendment's Due Process Clause. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (citing *Miranda v. County of Lake*, 900 F.3d 335, 346–47 (7th Cir. 2018)). Claims of inadequate medical care while in pretrial detention are subject to an objective reasonableness standard. *Id.* The plaintiff bears the burden to

demonstrate objective unreasonableness, and he must make a two-part showing. *Id.* First, he must show that the defendant acted purposefully, knowingly, or recklessly when considering the consequences of her response to the medical condition at issue in the case. *Id.* (citing *McCann v. Ogle County, Ill.*, 909 F.3d 881, 886 (7th Cir. 2018)). Second, the plaintiff must show that the challenged conduct was objectively unreasonable given the totality of the relevant facts and circumstances. *Id.*

Here, the Court finds that Plaintiff's claim fails based on a lack of evidence from which a reasonable juror could conclude that a reasonable professional in any of defendants' positions would have acted any differently than they did. To begin, Plaintiff's allegations against each individual defendant continue to be vague and it is unclear what exactly Plaintiff believes each defendant personally did to violate his constitutional rights. "A damages suit under § 1983 requires that a defendant be personally involved in the alleged constitutional deprivation." *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014). Notably, Plaintiff's brief in opposition fails to mention any specific defendant by name and fails to explain how each of them violated his constitutional rights.

Plaintiff does not explicitly dispute any of the joint submitted facts. However, he claims in his notarized opposition brief that he did complain to all defendants about his medical issues. ECF No. 97 at 2. Plaintiff alleges that his ear problem became chronic and more painful after his second Covid-19 infection in May/June of 2021. *Id.* Plaintiff contends that "all named Defendants in this action [were] aware of the Cov-19 infection going on in this County Jail and they ignored his and other[s] medical request[s] for help…." *Id.* at 2-3. Plaintiff's vague allegations of wrongdoing are insufficient at the summary judgment stage. Simply put, "[s]ummary judgment is the 'put up or shut up' time in litigation. *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) (quoting *Schacht v. Wisconsin Department of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). At the summary judgment stage, a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Id.* Plaintiff has not put forth any evidence here to

explain how any defendants were involved in a constitutional violation. In contrast, Defendants' evidence shows only that Martinez and Leyendecker were personally involved in responding to Plaintiff's medical issues; the Court therefore addresses the claims against these defendants separately.

The Court finds that no reasonable juror could find that Martinez and Leyendecker responded unreasonably to Plaintiff's medical condition. It is undisputed that Plaintiff suffered from a brain abscess and required surgery. However, Plaintiff presents no evidence that Martinez, Leyendecker, or any other defendant should have known about the brain abscess earlier or responded differently than they did. Martinez noticed that Plaintiff was acting strangely on March 10, 2023, and contacted medical professionals on Plaintiff's behalf that morning to receive treatment. Although the record is somewhat unclear how long Martinez waited to contact health officials, nothing indicates that it was a long period of time since health services arrived at 8:17 a.m. to check on Plaintiff's condition. Correctional officers, like Martinez, are "'not responsible for administering medical care to the inmate.'" *See McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022) (quoting *King v. Kramer*, 680 F.3d 1013 (7th Cir. 2013). Correctional officers, generally speaking, act reasonably by deferring to the judgment of jail health professionals and satisfy their duty by properly notifying health staff when an inmate is experiencing symptoms or what appears to be medical distress. *See id.* That is what Martinez did here. Martinez noticed that Plaintiff had symptoms of medical distress, reported those symptoms to medical staff, and made sure that Plaintiff was evaluated by medical staff. Nothing in the record indicates that any reasonable correctional would have responded any differently. Thus, the Court finds that Martinez acted objectively reasonably when responding to Plaintiff's need for medical attention.

The facts surrounding Leyendecker's involvement with Plaintiff are even more minimal. Leyendecker, presumably a supervisor, arrived with medical staff to check on Plaintiff following Martinez's request for help. Plaintiff was transported to an outside

medical center for treatment approximately one hour later. Plaintiff has put forth no evidence to indicate that a professional in Leyendecker's position would have acted any differently. As such, the Court finds that Leyendecker acted objectively reasonably when responding to Plaintiff's need for medical attention.

In sum, the Court finds that no reasonable juror could find that any defendants' actions were objectively unreasonable to address Plaintiff's medical concerns. Plaintiff has failed to show how the vast majority of the defendants were personally involved in any constitutional violation; Plaintiff's failure to provide any evidence of wrongdoing on these defendants' part is detrimental to his case at the summary judgment stage. While Plaintiff may have received inadequate care from *someone* in the Jail, he has failed to provide any evidence as to how the named defendants were personally involved. As to Martinez and Leyendecker, no juror could find that their actions were objectively unreasonable given the totality of the relevant facts and circumstances. The Court will accordingly grant Defendants' motion for summary judgment on the merits against all defendants and will dismiss this case with prejudice.[1]

## 4. CONCLUSION

For the reasons explained above, the Court grants Defendants' motion for summary judgment on the merits and will accordingly dismiss this action with prejudice. The Court has carefully reviewed the record and finds that Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment on the merits, ECF No. 92, be and the same is hereby **GRANTED**;

---

[1]Defendants also moved for summary judgment based on qualified immunity. ECF No. 93 at 9. Because the Court grants summary judgment on the merits, the Court need not reach the question of qualified immunity.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment based on the failure to exhaust administrative remedies, ECF No. 79, be and the same is hereby **DENIED as moot;** and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of November, 2026.

BY THE COURT:

______________________________

J. P. Stadtmueller

U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.